UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-20259-CR-SCOLA/GOODMAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RENE PEDROSA,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO SUPPRESS

This ruling involves a five-count superseding indictment for charges concerning child pornography and coercion of a 17-year-old minor boy to engage in sexual activity. It recommends that United States District Judge Robert N. Scola deny (a) Defendant's motion to suppress all evidence seized from two search warrants; (b) Defendant's alternate request to grant a motion *in limine* and exclude as unfairly prejudicial evidence concerning his web searches and browser history; and (c) an incorporated motion to sever Count V from the first four counts (and to try Counts I-IV before Count V). The factual and procedural background underlying this Report and Recommendations is outlined below.

1

## I.      Introduction

A federal grand jury returned a five-count superseding indictment charging Defendant Rene Pedrosa ("Pedrosa") with the following crimes: (1) Attempted Coercion and Enticement of a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b), concerning activity alleged to have occurred in and around November 2019 through January 2020; (2) Coercion and Enticement of a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b), concerning activity alleged to have occurred in and around November 2019 through December 22, 2019; (3) Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e), concerning activity alleged to have occurred in or around November 2019 through December 22, 2019; (4) Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), concerning activity alleged to have occurred on or about December 22, 2019; and (5) Attempted Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), concerning activity alleged to have occurred in or around July 2015 through August 2016. [ECF No. 47].

Pedrosa filed a "Motion to Suppress and/or in Limine, or in the Alternative, Motion to Sever," which, as the title indicates, seeks multiple forms of relief. [ECF No. 63]. The United States filed an opposition response [ECF No. 76] and Pedrosa declined to file an optional reply. United States District Judge Robert N. Scola, Jr. referred the motion to the Undersigned for a "Report and Recommendation and/or order." [ECF No. 67].

Based on the Government's request [ECF No. 77], I held an evidentiary hearing on August 30, 2022. [ECF Nos. 115; 122].

Pedrosa's myriad requests for relief all concern evidence obtained by law enforcement officers pursuant to two search warrants. Pedrosa's first request seeks suppression of all evidence obtained during the execution of both warrants because he believes each warrant is overbroad. [ECF No. 63]. His first alternative request asks the court to grant a motion *in limine* excluding evidence concerning his web searches and browser history on the basis that the evidence is unfairly prejudicial. Pedrosa's final request asks that Count V be severed from Counts I-IV under Federal Rule of Criminal Procedure 14(a).[1]

---

[1]     The Undersigned directed Pedrosa to clarify this request because his motion was unclear as to the specific relief he was seeking. [ECF No. 119]. In the body of his severance-focused argument, Pedrosa states,

> The Government's intent on using the Google searches and browser history at best solely relates to the attempt to [sic] attempted possession of child pornography which are [sic] unrelated to the alleged victim in this case. Using the Google searches and browser history of the Defendant any time prior to the allegations giving rise to the Superseding Indictment (DE 47) to prove that he attempted to lure the alleged minor victim to have sex and/or provide nude selfies are completely irrelevant and unfairly prejudicial.

[ECF No. 63]. This appears to be a request to sever Count V from Counts I-IV.

However, in his conclusion, Pedrosa asks that "the trial be separated between the dissemination of images and the alleged attempt to have sex with the alleged minor victim." *Id.* This request appears to ask that Counts I and II be severed from Counts III and IV.

The Government argues that Pedrosa's suppression request must be denied because neither warrant is overbroad and, even if they were, the good-faith exception to the exclusionary rule applies. [ECF No. 76]. Further, the Government contends that joinder of all offenses is proper under Federal Rule of Criminal Procedure 8(a). *Id.*

For the reasons outlined in greater detail below, the Undersigned **respectfully recommends** that the District Court **deny** Pedrosa's motion in whole.

## II.     Summary of Arguments

Pedrosa's first argument contends that both search warrants were overbroad "general warrants" and "all evidence related to the Government's search of Defendant's phone, web searches and browser history must be suppressed." [ECF No. 63]. Pedrosa argues that, at most, law enforcement could have obtained a warrant to search his electronics and online activity for content created between November 2019 and January 2020. *Id.*

His requested relief is unclear. In the body of Pedrosa's motion, he says that *both* warrants were overbroad. *Id.* ("The Search Warrants were overbroad and, as such, the evidence obtained must be suppressed."). However, in his conclusion, Pedrosa requests that the Court "[s]uppress the Google searches and browser history, as found in . . . [ECF

---

In his notice clarifying the requested relief, [ECF No. 119], Pedrosa explained that he desired Count V to be severed from Counts I-IV and that Counts I-IV be tried before Count V. [ECF No. 120].

No. 63-4]" -- which were obtained during the execution of *only* the second warrant -- and makes no mention of the other evidence obtained during the search of Pedrosa's electronics (which were seized during the execution of the first warrant). *Id.*[2]

On this issue, the Government argues that neither warrant was overbroad. According to the Government, Pedrosa's actions with S.R. (the minor boy) are sufficient to establish "a fair probability that [Pedrosa's] electronic devices and Google cloud account contained evidence of child enticement and child pornography offenses." [ECF No. 76]. It says that the warrants properly permitted a search unrestrained by time because courts have recognized that child pornography is "not a fleeting crime" and it is permissible to infer that, based on Pedrosa's conduct (enticing and obtaining sexually explicit images of a minor), there would be other evidence outside the timeframe of the specific conduct with S.R. As a fallback argument, the Government asks the court to apply the "good faith" exception to deny Pedrosa's request for exclusion.

Pedrosa's second argument is that if the evidence from the search of Pedrosa's Gmail account is not suppressed, then the Court should exclude the evidence as unfairly prejudicial under Federal Rule of Evidence 403. In his motion, Pedrosa claims that the only purpose of the evidence is to inflame the passions of the jury and reveal that he

---

[2]     During the evidentiary hearing, Pedrosa's argument attacked the legitimacy of both warrants, arguing that the first warrant was "way outside the bounds of the probable cause that [law enforcement] had" and the second warrant was "way overbroad and a general warrant."

watches pornography. He repeated this argument during the hearing and said that because the Government cannot provide any evidence about the images the search results revealed, the probative value of the searches is negligible and serves to only prejudice the jury.

Although this particular argument fell under a discrete subheading of Pedrosa's motion, the Government did not address the argument in its opposition response memorandum. [ECF No. 73]. During the hearing, however, the Government stated that its witnesses will be able to testify that Pedrosa's search terms (e.g., "young boy" or "young teen") and browser history, combined with the images found on Pedrosa's laptops, indicate that he was searching for images or videos of minors. It says that this evidence is relevant to Count V, which concerns Pedrosa's alleged attempt to obtain child pornography, and it contends that is for the jury to decide whether this evidence is sufficient to prove that crime.

In his final request, Pedrosa concedes that the search and browser history evidence "at best[,] solely relates to the attempt to [sic] attempted possession of child pornography" count. He argues that this count is unrelated to the other counts in the superseding indictment, which concern conduct alleged to have occurred between November 2019 and January 2020. Because Count V concerns conduct alleged to have occurred in or around July 2015 through August 2016 -- before Pedrosa even met S.R., the victim in the other four counts -- Pedrosa argues that it should be severed from the other

6

four counts. In Pedrosa's view, the evidence in Count V is "completely irrelevant" to the other four counts, which (according to his theory) means that trying all counts together would be "unfairly prejudicial." [ECF No. 63].

The Government contends that Pedrosa's argument misses the mark and that the proper inquiry for joinder of offenses is whether the charges "are of a similar character." [ECF No. 76]. The offenses in the superseding indictment, according to the Government, "are of the same or similar character" and demonstrate Pedrosa's "desire to engage in sexual activity with teenaged minor boys." The Government also contends that Pedrosa's request is disingenuous because he admitted during the hearing that the S.R.-related offenses are *more* prejudicial than those in Count V, which, the Government argues, means that joinder of Count V cannot unfairly prejudice Pedrosa as to Counts I-IV.

### III.    Factual Background

Two law enforcement officers testified during the suppression hearing: Miami-Dade Police Department ("MDPD") Officer Alexis Garcia ("Officer Garcia") and Federal Bureau of Investigation ("F.B.I.") Special Agent Alex Loff ("Agent Loff"). Although no documentary evidence was admitted during the hearing, the parties included as attachments to their pleadings: (1) the probable cause affidavit and accompanying search warrant issued by Miami-Dade State Circuit Court Judge John Schlesinger on January 28, 2020 (collectively, the "Property Warrant") [ECF Nos. 63-1; 63-2]; (2) the probable cause affidavit and accompanying search warrant issued by former-Chief United States

Magistrate Judge John O'Sullivan on March 9, 2020 (collectively, the "Google Warrant") [ECF Nos. 63-3; 76-1]; (3) a forensic examination report prepared by Agent Loff containing evidence obtained during the execution of the Google Warrant [ECF No. 63-4]; and (4) *In re: Sealed Search Warrant*, 17-MJ-03411-TORRES, a search warrant issued in a separate case [ECF No. 117-1].

In addition to this evidence, in response to the Undersigned's Order [ECF No. 123], the Government submitted ten signed federal warrants from child pornography/exploitation cases in this District which do not limit the search of media, electronics, internet activity, or other similar searches to a specific timeframe [ECF No. 125].

The Undersigned will organize the factual background by grouping the relevant witness testimony to the relevant document, which will be identified in the subheading.

### Officer Garcia/Property Warrant

Officer Garcia is currently a patrol officer with MDPD, a position which he has held for approximately ten months. Before his employment with MDPD, Officer Garcia worked for the City of Miami Police Department for approximately five and a half years. In January 2020, Officer Garcia was a detective with the City of Miami in the Special Victims Unit. At that time, he had been a detective in the unit for approximately ten months.

Officer Garcia was the lead detective assigned to investigate a possible criminal case against Pedrosa. On January 19, 2020, S.R.'s mother contacted the Special Victims Unit to report that her son had been sexually assaulted by an adult male at Miami City Hall. She learned of the assault on January 18, 2020, when S.R. disclosed to her the things that Pedrosa had been saying and doing. After S.R.'s mother contacted the police station, Officer Garcia's investigation revealed the following information:

In November 2019, Pedrosa contacted S.R. via Instagram to set up a meeting with him about a job opportunity to design a webpage for the City of Miami Mayor. Pedrosa met with S.R. and his mother in-person on November 18, 2019 to discuss the specifics of designing the webpage. S.R's mother left S.R. alone with Pedrosa, and S.R. and Pedrosa agreed to schedule a second meeting for November 25, 2019 at Miami City Hall.

On November 25, 2019, S.R.'s mother dropped S.R. off at City Hall for the meeting. Pedrosa took S.R. to a conference room and, while reviewing the potential web-page, Pedrosa tapped S.R.'s penis twice over his clothes. Pedrosa later began touching S.R.'s hair and asking him if he was nervous. As S.R. and Pedrosa were leaving, Pedrosa grabbed S.R., kissed him on the lips, and grabbed S.R.'s buttocks. As S.R. tried to pull away, Pedrosa took S.R.'s hand and placed it on his erect penis. Pedrosa escorted S.R. to another room and continued to kiss and touch S.R.'s buttocks. Eventually, S.R. pushed Pedrosa away and exited the room. Pedrosa escorted S.R. to the lobby and motioned for S.R. to cover his erection.

Following this encounter, Pedrosa contacted S.R. on WhatsApp, commented on S.R.'s erection, and asked S.R. to send him a picture of his erect penis. S.R. took a picture of his penis and sent it to Pedrosa. Following his receipt of the picture, Pedrosa texted S.R. a picture of an adult male penis. S.R. deleted these conversations from his device and a forensic search of S.R.'s cellphone failed to recover any illicit photographs or conversations.

S.R., however, was able to provide screenshots of more recent conversations between him and Pedrosa. The screenshots show messages from Pedrosa, texting S.R. early in the morning and telling him to wake up, telling S.R. that "[he] can come over," and Pedrosa stating that he would not want S.R. to feel horrible about what happened at City Hall.

After obtaining this background information, law enforcement officers conducted a controlled call between S.R. and Pedrosa. When S.R. expressed how he still felt horrible over what happened at City Hall, Pedrosa called him and said that S.R. needed to get over it and that S.R. had done worse things in the bathroom in front of strangers. Pedrosa followed this up with a text message stating that "it's not like we did anything horrible so get over it, for real." S.R. asked Pedrosa to delete the photos and Pedrosa responded that "[he] deleted everything out of respect. And all those conversations. I hope you did as well. I will always have your back man."

Officer Garcia explained during the hearing that he decided to seek a warrant to search Pedrosa's belongings. This was the first warrant he had ever prepared. In order to familiarize himself with the process, Officer Garcia reviewed templates of other child pornography-focused warrants prepared by other detectives in the Special Victims Unit. Once he read through the templates of previous warrants, Officer Garcia wrote a draft and circulated it to his colleagues in the unit for review.

After his colleagues reviewed his draft warrant, Officer Garcia sent the warrant to his supervisor, Sergeant Paul-Noel, for review. Sergeant Paul-Noel then sent the warrant to Lieutenant Baker, who reviewed the warrant and sent it back to Officer Garcia to correct some errors. Once Officer Garcia made those corrections, he began the process again, and the revised warrant was reviewed and approved by Sergeant Paul-Noel and then Lieutenant Baker.

Officer Garcia then sent the draft warrant to Assistant State Attorney ("ASA") Stewart Hendricks (an ASA in the Cyber Crimes Unit of the Miami-Dade State Attorney's Office) for review. After ASA Hendricks approved the warrant, he and Officer Garcia submitted the warrant to Judge Schlesinger for approval. Judge Schlesinger did not raise any issues with the warrant, and, in Officer Garcia's mind, the warrant was legally sufficient.

On cross-examination, Officer Garcia admitted that, at the time he applied for the warrant, he had no probable cause to believe Pedrosa committed any crimes before November 2019.

Police officers executed the warrant and seized Pedrosa's electronic devices, including a cellphone and an iPad. The devices were submitted to the Secret Service for forensic examination. Among other things, the forensic examination of the two devices uncovered numerous photographs of naked males, including Pedrosa, as well as messages between S.R. and Pedrosa via WhatsApp and text messaging.

Officer Garcia requested assistance from the F.B.I. and submitted his case file to Special Agent Daniel Alfin ("Agent Alfin").

**Agent Loff/Google Warrant**

Agent Loff is a special agent in the F.B.I.'s Child Exploitation and Human Trafficking Division. He has worked in that unit since 2018 and has been with the F.B.I. since 2016. Agent Loff took over as lead agent in the Pedrosa investigation after the former lead agent, Agent Alfin, was killed in the line of duty in April 2021.

During the hearing, Agent Loff testified at length about Agent Alfin's experience and expertise. Agent Loff explained that his desk was next to Agent Alfin's desk, which was full of awards Agent Alfin received over the course of his career. Agent Loff described Agent Alfin as the most-experienced agent in the squad. He further testified

that Agent Alfin was highly regarded by bureau agents throughout the country and was regularly called upon to aid other agents in their cases.

The "Affiant's Background" section of Agent Alfin's affidavit in support of the Google Warrant reveals additional information about his experience. According to the affidavit, Agent Alfin had reviewed thousands of still images and videos containing child pornography, attended multiple lectures concerning the investigation and enforcement of federal child pornography laws, and was certified to provide instruction to other agents concerning child exploitation investigations. He had been recognized in federal court as an expert in areas relating to computer forensics and the investigation of child exploitation crimes and testified in federal court on more than 20 occasions, both as an expert and as a lay witness.

The probable cause section of Alfin's affidavit began by summarizing much of what was described in Officer Garcia's Property Warrant application. After summarizing the background, Agent Alfin detailed the evidence obtained by law enforcement officers after the execution of the Property Warrant.

The search of Pedrosa's phone found that Pedrosa received images of an erect penis on December 22, 2019. They were consistent with the images S.R. claimed he sent Pedrosa. The background of the pictures was consistent with S.R.'s residence and S.R. confirmed that the photographs were of his penis. The phone search further revealed that Pedrosa texted S.R. "I'm dying to sleep with you," "Erase this," and "You and I would

13

have hoy [sic] foreplay." [The United States suggests that "hoy" is a typo and that Pedrosa meant "hot."].

Agent Alfin stated that the recovered messages had been deleted by the phone's user but were recovered via cellular telephone analysis software. However, some of the messages which S.R. stated existed (for example, where Pedrosa requested a photograph of S.R.'s penis) were not found via a search of the phone. Agent Alfin explained that Pedrosa's phone is an Android, which, in his experience, is typically associated with a Gmail account. In Agent Alfin's experience, Pedrosa's Gmail account is likely to contain backups of the missing messages, as well as location data, and data concerning the first Instagram message to S.R.

Agent Loff explained during the hearing that the F.B.I. and the United States Attorney's Office follow a specific procedure before submitting warrants to a federal judge for approval. The affiant-agent will work together with an Assistant United States Attorney ("AUSA") in drafting the warrant. Then, the AUSA will submit the proposed warrant to her supervisors, who must approve its submission to the judge. Once the AUSA's supervisors approve the warrant, it will be submitted to the judge. In this case, the first page of the warrant reveals that it was submitted by AUSA Vanessa Singh Johannes.

**Agent Loff/Forensic Report**

Agent Loff created a report which detailed the results of his search of the data disclosed by Google, LLC pursuant to the Google Warrant. To create this report, Agent Loff explained that he used software to find targeted information within the disclosed data. In this case, he limited his focus to Pedrosa's search and browser history and isolated the results using the term "young."

In his experience, Agent Loff testified, individuals seeking child pornography on the traditional channels of the internet often will not use search terms which blatantly disclose their intentions. Thus, it would be uncommon for a pedophile to use on Google the search terms "child porn" or "minors having sex." Instead, searchers will use less-conspicuous terminology which still has the potential for returning the desired result. He further explained that the term "young," when used in conjunction with other words, indicates either a search for, or the success in, finding child pornography.

The forensic report is a 47-page document which lists numerous searches and web page visits connected to Pedrosa's Gmail account. All results contain the word "young." Agent Loff explained that his expertise leads him to believe that specific results within the mass indicate either the search for, or the viewing of, child pornography.

As an example, he pointed to a December 2015 search for "naked young boys." In Agent Loff's opinion, the combination of the word "young" and "boy" indicates that the person conducting the search is seeking child pornography. The Government provided the following illustrative examples of similar combinations in its response:

15

http://www.bustyteengallery.com/movie/03u01/nude-young-teen-boys-img.html;         a

search for "young naked white boys"; and http://www.xvideos.com/video3851424

/hot_young_guys_naked_deep_and_hard_blowjob. [ECF No. 76].

On cross-examination, Pedrosa established that Agent Loff was never able to

recover the images or videos contained on the webpages Pedrosa visited. He further

established that none of the searches explicitly contained references to child

pornography.

In response to this line of questioning, however, Agent Loff later explained that he

was unable to view the webpages because the images and videos had been removed and,

in his experience, the only reasons these types of things are removed is because the result

was either copyrighted, was revenge pornography, or consisted of child pornography.

He further explained that some of the sexually explicit images found on Pedrosa's

electronics appeared to come from the internet and, in his opinion, depicted minors.[3]

In discussing the relevance of this evidence to Count V of the indictment, Agent

Loff admitted that there was no evidence of confirmed child pornography and that the

---

[3]     Although Agent Loff explained that he believed some of the images to depict
minors, he admitted that a pediatrician reviewed the images and was unwilling to state
beyond a reasonable doubt that the images in fact depicted minors. Nevertheless, the
doctor's opinion was that some of the images appeared to be of minors; he felt
uncomfortable actually testifying to that clinically, however. As explained by Agent Loff,
the pediatrician said it was difficult to discern a specific age when a boy or young man is
depicted with an erect penis.

Government was relying upon the discovered images, webpage visits, and web searches to support the charge.

## IV.   Applicable Legal Standards

### a.   Warrants

The Fourth Amendment permits search warrants to be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. CONST. amend. IV.

There are two distinct constitutional protections served by the warrant requirement: (1) searches must be based on probable cause as "no intrusion at all is justified without a careful prior determination of necessity"; and (2) "those searches deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 2038, 29 L. Ed. 2d 564 (1971), holding modified by *Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

To satisfy the second protection, the description of the things to be seized must be "as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985) (citing *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982)). "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by

the probable cause on which the warrant is based." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006).

As stated by the Supreme Court, the purpose of this constitutional requirement is to protect against "the use of general warrants as instruments of oppression." *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 510, 13 L.Ed.2d 431 (1965). Thus, a warrant which fails to sufficiently particularize the place to be search or the evidence to be seized is unconstitutional and, in order to deter such warrants and searches, evidence obtained pursuant to an unconstitutional warrant must be excluded from use at trial. *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

   b. Good Faith

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140, 129 S. Ct. 695, 700, 172 L. Ed. 2d 496 (2009) (citing *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Application of the exclusionary rule is constrained by the principle of "appreciable deterrence." *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984). The key inquiry when determining whether a Fourth Amendment violation warrants exclusion focuses on the "efficacy of . . . deterring Fourth Amendment violations in the future." *Herring*, 555 U.S. at 141 (citing *Stone*, 428 U.S. at 486).

The rationale is based on the principle that excluding evidence based on the conduct of an officer who has acted in an objectively reasonable way will have no effect

18

on deterring future unlawful or unreasonable conduct. *Leon*, 468 U.S. at 920. As stated by

the Supreme Court:

> This is particularly true, we believe, when an officer acting with objective
> good faith has obtained a search warrant from a judge or magistrate and
> acted within its scope. In most such cases, there is no police illegality and
> thus nothing to deter. It is the magistrate's responsibility to determine
> whether the officer's allegations establish probable cause and, if so, to issue
> a warrant comporting in form with the requirements of the Fourth
> Amendment. In the ordinary case, an officer cannot be expected to question
> the magistrate's probable-cause determination or his judgment that the
> form of the warrant is technically sufficient. Once the warrant issues, there
> is literally nothing more the policeman can do in seeking to comply with
> the law. Penalizing the officer for the magistrate's error, rather than his
> own, cannot logically contribute to the deterrence of Fourth Amendment
> violations.

*Id.* at 920-21 (internal citations, quotations, and footnotes omitted).

This does not mean that the mere fact an officer has obtained a warrant will

insulate the officer from a finding that his actions were unreasonable or unlawful. For

example, "officers do not act in objective good faith . . . if the warrant is so overly broad

on its face that the executing officers could not reasonably have presumed it to be valid."

*United States v. Travers*, 233 F.3d 1327, 1330 (11th Cir. 2000). Nor would an officer manifest

objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable." *Brown v.

Illinois*, 422 U.S. 590, at 610–11 (1975) (POWELL, J., concurring in part). However, if an

officer relies upon a warrant which does not suffer from these extreme faults -- even if

19

the warrant is later declared unconstitutional -- then exclusion is inappropriate. *Leon*, 468 U.S. at 920-21.

c. <u>Joinder</u>

The Government may charge a defendant with two or more offenses in the same indictment, provided that the charged offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8. Whether joinder is proper based on similarity in character focuses on whether the offenses are "somewhat alike" or "hav[e] a general likeness," not on whether the offenses "arise at the same time or out of the same series of acts or transactions." *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002).

Thus, offenses which are similar in character may be properly joined even if there are large gaps between the period in time during which offenses were committed. *Id.* (affirming the district court's denial of the defendant's motion to sever counts which were similar in character but shared minimal temporal proximity).

**V.   Analysis**

a. <u>The Property Warrant</u>

The Property Warrant permitted law enforcement to search Pedrosa's home and to seize, among other things, cellular telephones, computers, tablets, electronic devices with internet access or digital storage, media storage devices (e.g., BluRays, thumb-drives, zip-drives, etc.), and other electronics. [ECF No. 63-2]. Seizure of this material was

authorized so that law enforcement could search it for address books, messages, emails, photographs, data, metadata, location data, security information, and encrypted files, data, and other similar information. *Id.*

Pedrosa's argument as to *why* this warrant is overbroad is barebones. He refers to it as a "general warrant," issued based on probable cause concerning a crime that began in November 2019. [ECF No. 63]. At the hearing, Pedrosa elaborated on his argument by specifying that his contention is focused on the warrant's lack of a time limitation. Pedrosa's arguments (in his motion and during the hearing), however, contain very little legal analysis and rely primarily on attorney rhetoric. Although Pedrosa is challenging warrants concerning electronic devices and internet accounts, his legal authority on the topic of overbreadth consists exclusively of cases which predate 1983. [ECF No. 63 (citing *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982) and *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)].

At bottom, Pedrosa appears to contend that because he and S.R. first communicated in November 2019 and ceased communicating in January 2020, any search for information outside of that timeframe is unconstitutional. This argument, however, advances a far-too-restrictive definition of overbreadth.

The Property Warrant explains that the requested information is necessary to (1) find evidence concerning the events described by S.R. (for example, location data which would place Pedrosa at City Hall during the November 25, 2019 meeting with S.R.) and

(2) find evidence which would establish that the electronic devices belong to Pedrosa and were in his custody and control.

As explained by Agent Loff during his testimony concerning forensic searches of electronic devices (and as argued by the Government in its response), Pedrosa's definition of a constitutional warrant ignores many of the practical realities attendant to his alleged criminal behavior. Because files can be moved and creation dates can be altered or eliminated, a search constrained by the dates or subject area in question might prevent law enforcement from retrieving evidence which has been moved to an inconspicuous digital folder or for which the creation date has been altered or removed.

The ability of the device-owner to tamper with the data on the device has been recognized by federal courts as an important consideration when assessing warrants concerning physical electronics. *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) ("The means of hiding evidence on a hard drive—obscure folders, misnamed files, encrypted data—are not currently possible in the context of a Facebook account. Hard drive searches require time-consuming electronic forensic investigation with special equipment, and conducting that kind of search in the defendant's home would be impractical, if not impossible."); *United States v. Mann*, 592 F.3d 779, 782 (7th Cir. 2010) ("The problem with applying this principle to computer searches lies in the fact that such images could be nearly anywhere on the computers. Unlike a physical object that can be

immediately identified as responsive to the warrant or not, computer files may be manipulated to hide their true contents.").

As explained by the Third Circuit in the context of searching hard drives, a "broad seizure [is] required" because "evidence of [the] crimes could have been found in any location on any of the six hard drives, and this evidence very likely would have been disguised or concealed somewhere on the hard drive." *United States v. Stabile*, 633 F.3d 219, 234 (3d Cir. 2011) (citing *United States v. Adjani*, 452 F.3d 1140, 1150 (9th Cir. 2006)); *see also Hill*, 459 F.3d at 978 ("Images can be hidden in all manner of files, even word processing documents and spreadsheets. Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer.").

Moreover, as a practical matter, law enforcement is entitled to obtain information which would establish Pedrosa's control over the electronics. As defense counsel argued during the hearing, electronic devices can sometimes contain the medical records or bank records of the owner. Certainly, Pedrosa's medical records likely have very little or nothing to do with the crimes for which he has been indicted. However, if law enforcement found Pedrosa's medical records on the same device in which it located the photographs allegedly shared between Pedrosa and S.R., then the medical records could establish that the device belongs to Pedrosa or could undercut a defense argument that

another individual had control over the device. Alternatively, Pedrosa could have hidden files of child pornography in his medical records folder.

Certainly, the approved warrant allowed law enforcement great latitude in their search. However, Pedrosa has not alleged that law enforcement abused that latitude. *United States v. Richards*, 659 F.3d 527, 542 (6th Cir. 2011) (holding warrant that authorized search of computer servers for evidence of child pornography was not unconstitutionally overbroad and considering the fact that there was no actual claim that the search process was abused by the federal agents); *United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006) ("There is no evidence of exploratory rummaging through files, or inadvertent discoveries. No wholesale searching occurred here, despite the broad authority the warrant may have granted." (internal citation omitted)). Nor is there any indication that the Property Warrant sought information concerning general criminal activity. *Cf. United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) ("Our case law therefore suggests that warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of materials. The warrant in this case was not limited to any particular files, or to any particular federal crime . . . . By its terms, the warrant thus permitted the officers to search for anything—from child pornography to tax returns to private correspondence." (internal citations omitted)).

Federal courts recognize that the seizure of a defendant's home computer equipment and digital media is constitutionally permissible "as long as the probable-

cause showing in the warrant application and affidavit demonstrate 'a sufficient chance of finding some needles in the computer haystack.'" *United States v. Evers*, 669 F.3d 645, 652 (6th Cir. 2012) (quoting *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999)). Concerning breadth, a warrant need only be "as specific as the circumstances and nature of activity under investigation permit." *Wuagneux*, 683 F.2d at 1349 ("It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit.").

The search and seizure authorized by the Property Warrant is as narrowly tailored as possible to allow law enforcement officers to properly search for the evidence it believed existed. To require a more narrowly-tailored search in such a situation would gut law enforcement's ability to effectively enforce criminal statutes which might involve computers and would reward criminals savvy enough to alter or hide the digital evidence of their illicit activities. Pedrosa has failed to offer any rebuttal to the many justifications offered by law enforcement for why the warrant needed to be phrased as is, failed to present any evidence that law enforcement acted recklessly or improperly during their search of his devices, and failed to present any legal authority declaring a similar warrant invalid.

At bottom, the Property Warrant is constitutional and is as particular as the circumstances allow. For these reasons, the Undersigned **respectfully recommends** that the District Court **deny** Pedrosa's request to suppress evidence obtained during the execution of the Property Warrant.

      b.  <u>The Google Warrant</u>

The Google Warrant required Google, LLC to disclose to law enforcement considerable data connected to Pedrosa's Gmail account, including, but not limited to, the contents of all emails and messages, the date the account was registered, names associated with the account, records of session times, connected bank account or credit cards, location data, all web and app activity, and all images, videos, and other digital files. [ECF No. 63-3].

Once Google, LLC provided to law enforcement the responsive information, law enforcement officers were permitted to seize evidence establishing who used, owned, or controlled the account, evidence establishing when the account was used, information concerning devices linked to the account, all location data, browser history, search terms, and data, images, videos, and records concerning child exploitation. *Id.*

Pedrosa complains that this warrant allowed law enforcement agents unfettered access to his entire internet history based on probable cause concerning a crime which spanned only a few months in late 2019 through early 2020. He notes that, pursuant to this warrant, law enforcement officers probed into his internet search history spanning

back years before the crimes described in the probable cause affidavit allegedly occurred. According to Pedrosa, this warrant allowed law enforcement to rummage through his personal information without limitation.

The Government's response is twofold: (1) the warrant is not overbroad because courts have recognized that child exploitation is a continuing crime, which generates a permissible inference that this specific type of criminal will have engaged in these types of crimes for long periods of time; and (2) law enforcement relied upon the warrant in good faith, so even if there was a Fourth Amendment violation, exclusion is an inappropriate remedy. [ECF No. 76].

In support of its first argument, the Government relies on cases discussing the unique nature of child exploitation investigations and argues that this warrant is permissible under these specific facts. The Government argues that the same circumstances which support finding that the warrant is not overbroad, in addition to the subjective good faith actions of law enforcement, also support a finding that, even if the warrant is overbroad, the good-faith exception prohibits exclusion.

Pedrosa opted to not file a reply memorandum and did not preemptively address the Government's good faith argument in his initial motion. In response to a question from the Undersigned during the hearing about his position on the issue of good faith, Pedrosa maintained the crux of his initial argument, which is that these warrants went beyond any established probable cause, and it was unreasonable for officers to believe

27

they could rummage through years of information. He cited no factually comparable legal authority in support of this position.

Although I will address the breadth of the warrant in the context of good faith, I need not reach the conclusion of whether the Google Warrant is overbroad because, even if it were, the good-faith exception applies, and exclusion is unwarranted. As will be explained in more detail below, there are multiple factors which support finding law enforcement acted in good faith: (1) there was a review process in obtaining the warrant; (2) other similar warrants have been approved by multiple judges throughout this District; (3) Agent Loff's actions in performing the search; and (4) the issue of whether the warrant is overbroad is a close call.

Agent Loff's testimony established that several steps occur before a warrant is presented to a judge. First, the agent works with an AUSA in preparing the warrant. Second, once the AUSA determines that the proposed warrant is sufficient, the warrant package is presented to a supervisor (another AUSA) for review. Only after the AUSA's supervisor approves the warrant package does the warrant get presented to a judge for approval.

Thus, any F.B.I. agent seeking a search warrant must obtain the approval of two separate prosecutors before the warrant may be presented to a judge. Although the affiant agent did not testify during the hearing, Agent Loff explained that this is standard protocol. Further, observance of this protocol is corroborated by AUSA Vanessa Singh

Johannes' signature on the warrant. Pedrosa has offered no evidence or argument to support an inference that this series of events did not occur here.

"It is indicative of good faith that an officer consults with a prosecutor before seeking a search warrant and submits it to a neutral magistrate." *United States v. Schulz*, 486 F. App'x 838, 842 (11th Cir. 2012) (citing *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990)). The level of review present here does not support Pedrosa's claim that officers exhibited a reckless disregard or indifference to his constitutional rights. To the contrary, it reflects a desire to engage in only permissible conduct. *See United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010) (considering the fact that the executing officer had the warrant reviewed by the prosecutors as an "additional objective reason to believe the warrant was valid"). Thus, the procedure by which the warrant was obtained supports a finding of good faith.

The fact that these types of warrants are regularly approved in this District also supports a finding of good faith. In response to an Order from the Undersigned [ECF No. 123], the Government filed a notice containing as attachments ten search warrants issued in other cases involving child exploitation or child pornography in which law enforcement agents were authorized to search unencumbered by a date restriction either personal electronics or internet accounts for evidence of the offenses. [ECF No. 125].

The illustrative warrants were approved by ten different judges in this District, and include judges from the Miami, Fort Lauderdale, and West Palm Beach divisions.[4] *Id.* The search warrants issued in these other cases are extremely similar and, at times, nearly identical to both the Property Warrant and the Google Warrant. For example, the warrant issued in 20-6572-VALLE is identical as to the data Google, LLC was required to disclose and the information law enforcement was permitted to seize in all respects except for paragraph j, which used slightly different language concerning the seizure of actual child pornography or erotica.

The fact that search warrants in these types of cases are **regularly** issued with no temporal limitation bolsters the Government's position that law enforcement officers believed in good faith that this warrant was valid despite its lack of a time restriction. At a minimum, it undermines Pedrosa's contention that the Google Warrant is so obviously invalid that law enforcement should have somehow *known* that it was unconstitutional.

The manner in which Agent Loff handled that information disclosed by Google, LLC also supports a finding of good faith. Agent Loff explained during the hearing how he generated the forensic report. First, he reviewed the case file, which included the evidence concerning Pedrosa's relationship with S.R., web search history indicative of

---

[4]     The Government attached search warrants issued in the following cases: 22-02259-TORRES; 22-02300-GOODMAN; 20-2155-REID; 22-03307-LOUIS; 20-6572-VALLE; 22-6400-HUNT; 20-6259-SNOW; 21-6208-STRAUSS; 21-8314-REINHART; and 22-00069-McCABE.

child pornography, and approximately 300 images depicting young men in sexual positions, including approximately 50 which he believed to be child pornography. Based on this evidence, Agent Loff determined that he might find relevant evidence by searching the cache of disclosed information for the term "young."

Agent Loff explained that his experience investigating child exploitation cases has revealed the individuals seeking child pornography on the general internet (as opposed to an entity such as the Dark Web) will use the term "young" as a qualifier in their search. This is because a person seeking child pornography is unlikely to use search terms which would be an obvious indicator, such as "child pornography," "toddler," or "minor." The generated forensic report includes repeated instances of the term "young" modifying sexually-focused search queries made between 2013 and 2018.

One of the critical factors identified by the United States Supreme Court in balancing whether evidence should be excluded is whether there was a flagrant or deliberate violation of rights. *Herring*, 555 U.S. at 143. Thus, in determining whether law enforcement acted in good faith, the Court can examine the manner in which the search was executed. *Travers*, 233 F.3d at 1331 (affirming the trial court's determination that the good faith exception applied to an overbroad warrant, in part, based on the trial court's factual finding that the agents did not "deliberately exceed[] the scope of their warrant in the items seized during the searches").

"A good faith attempt to stay within the boundaries of an inherently broad warrant will support a finding that the search -- taken as a whole -- was reasonable[.]" *United States v. Heldt*, 668 F.2d 1238, 1269 (D.C. Cir. 1981); *cf United States v. Ganias*, 824 F.3d 199, 225 (2d Cir. 2016) (considering the reasonableness of the agents' actions through the investigation in assessing whether the good faith exception applied to an arguably unconstitutional warrant).

Agent Loff's actions during the actual search of the Google data exemplify good faith. Pedrosa's contrary arguments are limited to possibilities and supposition. He argues about the types of information that *could* have been seized during Agent Loff's search of the Google data. However, he presented no evidence -- nor did he even ask a question of Agent Loff -- concerning any improper forensic examination of the Google data. Instead, Pedrosa's inquiry was focused on the *possibly* innocent explanations for the discovered search terms and web page views.

At the heart of any analysis of the Government's reliance on the good-faith exception to an unconstitutional warrant is whether the warrant is so overly broad on its face that the executing officers could not reasonably have presumed it to be valid. *United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985); *Leon*, 468 U.S. at 923 ("[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."). There is some necessary

overlap between some of the previously-addressed factors and this ultimate conclusion, but assessing this final question also involves examining the specific contents of the warrant.

Pedrosa argues that any reasonable officer would have realized that this warrant was facially deficient because it is illogical to think that probable cause for, at most, three months of criminal activity would justify search records dating back over five years. The Government's response to this claim is that the crimes for which Pedrosa was being investigated are unique and it is well accepted that pedophilic activity will often date back years. During the hearing, Pedrosa equated this argument to a claim that just because a defendant committed an armed robbery once, he must have done it in the past.

Pedrosa's counter to the Government's argument is a strawman argument. As the Government notes in its response, pedophilic crimes operate in a unique sphere. Courts throughout the country have recognized the longevity and durational nature of this type of offense. *See, e.g., United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) ("Given the compulsive nature of the crime of possession of child pornography and the well-established **hoarding** habits of child pornography collectors, there is no 'bright-line' test for determining when information is stale or the probative value of all suspected child pornography activities." (emphasis added)); *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) ("[W]e have held that child pornography is not a fleeting crime and it is a crime that is generally carried out in the secrecy of the home and over a **long** period." (internal

quotations omitted) (emphasis added)); *United States v. Potts*, 586 F.3d 823, 831 (10th Cir. 2009) ("We have previously said . . . that those who acquire [child pornography] are likely to **hoard** [it] for **significant** periods of time." (emphasis added)).

As explained by the Eleventh Circuit in *Blake*, there is a distinction between warrants which seek to search a defendant's personal electronics and warrants which seek to search a web-based entity. 868 F.3d at 973-74. Unlike a personal hard drive, which can be altered by a defendant prior to search, presumably the information held by an entity such as Google would not be susceptible to such manipulation. *Id.* Despite making this distinction, the appellate court affirmed the application of the good-faith exception finding that "while the [internet] warrants may have violated the particularity requirement, whether they did is not an open and shut matter; it is a close enough question that the warrants were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid." *Id.* at 975.

A search for *only* evidence concerning Pedrosa's relationship with S.R. would unreasonably limit the officers' ability to search and seize evidence which is deemed relevant. Courts recognize that there is a connection between pedophilic activity -- such as requesting a known minor to send sexually explicit photographs -- and the collection of child pornography. *United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1353 (N.D. Ga. 2009), aff'd, 676 F.3d 1000 (11th Cir. 2012) ("[N]umerous courts have recognized the strong link between pedophilic behavior and possession of child pornography." (internal quotations

omitted)); *United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994) ("[C]ommon sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography."). Thus, it is not patently obvious that a warrant-authorized search for such material would not be permitted by the probable cause in Agent Alfin's affidavit or is so overbroad as to be facially invalid.

Law enforcement's warrant application process and actual execution of the warrant support a subjective finding of good faith. Moreover, this type of warrant (i.e., without a date limitation) has been routinely approved by different judges throughout this District, which supports a finding that law enforcement officers would reasonably believe the Google search here to be permissible.

Finally, at best for Defendant, whether the warrant is actually overbroad is at most a close call. Phrased differently and in informal terms, the issue is not a slam-dunk winner for the defense. Therefore, in this type of situation, exclusion would have no deterrent effect because there has been no flagrant or reckless disregard for Pedrosa's constitutional rights. Thus, on the basis of the good faith exception, the Undersigned **respectfully recommends** that the District Court **deny** Pedrosa's motion to suppress evidence obtained pursuant to the Google Warrant.

     c.  <u>Motion *in Limine*</u>

As an alternative to suppression, Pedrosa asks that this Court exclude the results of the forensic examination under Federal Rule of Evidence 403. According to Pedrosa, "[t]he issue before the jury is whether [he] sent or received inappropriate images to a specific alleged victim beginning on November 3, 2019, not whether [he] searched for pornography (which has not been determined to be child pornography) two years prior to the alleged crime." [ECF No. 63]. He claims that this evidence serves to only prejudice the jury against him by revealing that he searches for pornography. *Id.*

Pedrosa's argument ignores the reality that Count V of the superseding indictment charges him with attempted possession of child pornography between July 2015 and August 2016. Thus, the issues which will be before the jury extend beyond Pedrosa's interactions with S.R. beginning in November 2019 and concern his activities dating back years prior.

Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The Eleventh Circuit has repeatedly cautioned that Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir .2011) (quoting *United States v. Alfaro–Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). The term "unfair prejudice," as applied to a criminal defendant, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground

different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).

In applying Rule 403, the Court is required to examine the subject evidence in "a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *Lopez*, 649 F.3d at 1247 (quotation marks omitted). While the trial court's discretion to admit relevant evidence is broad, its "discretion to **exclude** evidence under Rule 403 is narrowly circumscribed." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (quotation marks omitted) (emphasis added).

Framed by these principles, resolving this issue is straightforward. Agent Loff's unimpeached and unobjected-to testimony established that the evidence Pedrosa seeks to exclude is the evidence which, in part, establishes that Pedrosa committed the crimes charged in Count V. Pedrosa has not established that this evidence -- which he claims has not been conclusively established to concern child pornography and characterizes as a mere search for normal pornography -- will unfairly prejudice a jury who is being told that he attempted to receive child pornography and actively solicited child pornography from a known minor. Thus, the Undersigned **respectfully recommends** that the District Court **deny** Pedrosa's motion *in limine* to exclude the web search and browser history.

d. Severance

In Pedrosa's final request, he asks the Court to sever Count V from the remaining counts in the superseding indictment and that the trial for Counts I-IV occur before the

trial for Count V. [ECF No. 124]. Pedrosa concedes that the evidence in the forensic report is, at best, relevant to Count V. He argues, however, the severance is appropriate because the allegations in Count V have nothing to do with the allegations in Counts I-IV, which all concern Pedrosa's interactions with S.R. In support of his request, Pedrosa cites to only Federal Rule of Criminal Procedure 14(a), which states that "the court *may* order separate trials of counts" if the "joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government. Fed. R. Crim. P. 14(a) (emphasis added).

The Government contends in its response that the counts are properly joined under Federal Rule of Criminal Procedure 8(a) because they are similar in nature, and Pedrosa has failed to establish that joinder will cause him compelling prejudice. [ECF No. 76]. In the Government's view, "[a]ll of the charges against [Pedrosa] in the Superseding Indictment are of a similar character; they relate to his desire to sexually exploit minors through the internet to satisfy his untoward interest in teenaged minor boys." *Id.*

The Government has the better argument. First, joinder of offenses concerning child molestation/exploitation and offenses concerning child pornography is proper because these types of offenses are "similar in character." *See Hersh*, 297 F.3d at 1242 (holding that joinder of offenses concerning "engaging in sexual activity with a minor" and "receiving and possessing visual depictions of minors engaged in sexual activity" is proper because both reflect "repeated participation in the sexual exploitation of minors" and "involv[e] the extraordinary mistreatment of children").

38

Second, Pedrosa has failed to demonstrate that joinder will cause him *compelling* prejudice. *United States v. Lopez*, 649 F.3d at 1234 ("A defendant seeking a severance must carry the 'heavy burden of demonstrating [that] compelling prejudice' would result from a joint trial. (quoting *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007)).

"To show compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *Id.* Pedrosa has fallen well short of meeting this burden. In his motion, Pedrosa makes only the circular argument that the evidence supporting Count V is "completely irrelevant and unfairly prejudicial" to the evidence supporting the remaining counts. His closing argument during the hearing provided marginally-more detail for his claim of prejudice, which is that this evidence merely shows that Pedrosa was searching for pornography, which he believes is prejudicial.

This final argument -- that the search evidence shows only that Pedrosa was looking for *legal* pornography -- actually cuts against Pedrosa's request. The evidence supporting Counts I-IV will presumably consist of testimony that Pedrosa groped a minor's genitalia and buttocks, kissed a minor forcefully, encouraged a minor to send sexually explicit photographs, and sent sexually explicit photographs to a minor in response. The Government will further argue that Pedrosa did these things after reaching out to the minor to offer him employment. A jury hearing this testimony will not be

unduly prejudiced against Pedrosa based on (as Pedrosa characterizes the evidence) an internet search for lawful pornography.

Courts routinely permit the joinder of possession of child pornography offenses with other offenses involving child exploitation. *See, e.g., United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017) (affirming trial court's denial of defendant's motion to sever transportation of child pornography count from possession of child pornography count); *United States v. Unrein*, 688 F. App'x 602, 607 (11th Cir. 2017) (affirming the trial court's denial of the defendant's motion to sever child enticement count from possession of child pornography count); *Hersh*, 297 F.3d at 1242 (affirming the trial court's denial of the defendant's motion to sever engaging in sexual activity with a minor counts from possession of child pornography counts). Pedrosa has failed to demonstrate that joinder of these counts will result in anything more than the usual prejudice which befalls defendants accused of multiple crimes.

Because there is no compelling prejudice which will result from trying all counts in the superseding indictment together, the Undersigned **respectfully recommends** that the District Court **deny** Pedrosa's Motion to Sever.

## VI.    Conclusion

The Undersigned **respectfully recommends** that Judge Scola **deny** in whole Pedrosa's motion.

## VII.   Objections

The parties will have seven (7) days from the date of being served with a copy of

this Report and Recommendations within which to file written objections, if any, with

United States District Judge Robert N. Scola. Each party may file a response to the other

party's objection within seven (7) days of the objection. Failure to file objections timely[5]

shall bar the parties from a *de novo* determination by the District Judge of an issue covered

in the Report and shall bar the parties from attacking on appeal unobjected-to factual and

legal conclusions contained in this Report except upon grounds of plain error if necessary

in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985);

*Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on

September 9, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All counsel of record

---

[5]     The Undersigned is shortening the time for Objections and Responses because the issues have been well-briefed, the parties had a multi-hour suppression hearing in which closing arguments were made and considered and the trial is scheduled to begin on October 11, 2022.

41